IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01420–KMT

DAWN SALAZAR, as heir and next of kin of
DONNA ZUBER, deceased,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

---

# ORDER

---

Before the court is "Defendant's Motion for Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g)." (["Motion"], Doc. No. 51.) Plaintiff has responded in opposition to the Motion, Defendant has relied, and Plaintiff has sur-replied. (["Response"], Doc. No. 52; ["Reply"], Doc. No. 53; ["Sur-Reply"], Doc. No. 56.) For the following reasons, the Motion is DENIED.

## STATEMENT OF THE CASE

### *I. Procedural History*

On June 7, 2018, Plaintiff Donna Zuber filed this action, pursuant to the Social Security Act ["the Act"], 42 U.S.C. § 405(g), seeking judicial review of a final decision by Defendant Andrew Saul, Commissioner of the Social Security Administration ["Commissioner"], denying her applications for disability insurance benefits ["DIB"], under Title II of the Act, and for

supplemental security income ["SSI"], under Title XVI of the Act.  (Doc. No. 1.)  In her applications for benefits, both of which were filed on January 13, 2015, Ms. Zuber claimed that she had been unable to work since November 7, 2014, due to issues affecting her "back" and "neck."  (Social Security Administrative Record ["AR"], Doc. Nos. 12, 47, at 174-81, 205.)  The Commissioner denied Plaintiff's applications on March 30, 2015.  (AR 83-84.)  Ms. Zuber then successfully requested a hearing before an administrative law judge ["ALJ"], which was held on March 14, 2017.  (AR 849-883.)  Following that hearing, the ALJ issued a written decision, dated May 3, 2017, finding that Ms. Zuber was not disabled through the date of the decision, and thus, denying her applications for benefits.  (AR 817-26.)  On March 23, 2018, the Appeals Council denied Ms. Zuber's request for review of the ALJ's decision.  (AR 832-37.)  That denial prompted Plaintiff's request for judicial review.  (Doc. No. 1.)

In the interim, Ms. Zuber was diagnosed with breast cancer, and on September 13, 2016, she underwent a double mastectomy followed by several months of chemotherapy and reconstructive surgery.  After the cancer eventually metastasized, on April 26, 2018, Ms. Zuber filed a new round of applications for DIB and SSI.  (AR 846.)  On May 22, 2018, the SSA's Disability Determination Services ["DDS"] rendered a favorable determination as to those applications, finding Ms. Zuber to be disabled from breast cancer, beginning on April 29, 2017.  (*Id.*)  Given that DDS found Plaintiff to be disabled starting on April 29, 2017, while the ALJ found Plaintiff to be *not* disabled through May 3, 2017, the two decisions were in conflict.  (*Id.*)

Based on the conflicting results of Plaintiff's separate applications for benefits, on November 1, 2018, the parties in this civil action filed a joint motion to remand the case for further administrative proceedings, pursuant to sentence six of 42 U.S.C. § 405(g).  (Doc. No.

2

24.) That motion was granted, on November 1, 2018, and the case was then remanded to the Commissioner. (Doc. No. 25.)

## II. Proceedings on Remand

### A. ALJ Hearings

On remand, the Appeals Council vacated the Commissioner's previous decision as to Plaintiff's initial applications for benefits, and returned the case to the ALJ "to further consider the evidence, including the additional evidence presented under the subsequent application, and to make new findings and issue a new decision." (AR 846-47.) A hearing was then held, on April 22, 2019, before ALJ Diane S. Davis. (AR 1929-40.) Plaintiff, who had recently entered hospice care, was not present at the hearing, though her attorney, Thomas Hill, appeared on her behalf. (AR 1931.)

At the hearing, the ALJ first stated her impression that the discrepancy between the DDS disability determination—finding Plaintiff disabled as of April 29, 2017—and the ALJ's decision—finding Plaintiff not disabled through May 3, 2017—was attributable to the fact that DDS "relied on the date that the [ALJ's] Decision was uploaded into the file rather than the actual date of the Decision." (AR 1932.) The ALJ informed Mr. Hill that, because Plaintiff's two benefits claims overlapped, and because the Appeals Council did not explicitly limit the scope of her review, she intended to exercise jurisdiction over both claims. (AR 1932, 1934.) The ALJ then expressed her belief that DDS erred, when it found that, as of April 29, 2017, Ms. Zuber's breast cancer was severe enough to be presumptively disabling. (AR 1933-35.) A few minutes later, the ALJ paused the hearing so that Mr. Hill could attempt to contact his client via telephone. (AR 1937-38.) When the hearing resumed, Mr. Hill informed the ALJ that Ms.

Zuber had, in fact, succumbed to metastatic breast cancer and died two days earlier, on April 20, 2019.  (AR 1938; *see* AR 1005.)  The ALJ, in response to this news, postponed the remainder of the hearing, so that Ms. Zuber's attorney could, if necessary, obtain a substitution of parties. (AR 1938.)

On May 7, 2019, Plaintiff's adult daughter, Dawn Salazar, filed a Notice Regarding Substitution of Party Upon Death of Claimant, requesting that she be substituted as the party of record for purposes of adjudicating Plaintiff's claims.  (AR 743, 951.)  Ms. Salazar's request was ultimately approved, and another hearing was then held, on November 14, 2019, again before ALJ Diane S. Davis.  (AR 775-812.)  Ms. Salazar appeared and testified at the hearing, accompanied by her mother's attorney, Mr. Hill.  (AR 777, 788-809.)  The ALJ also heard testimony from a vocational expert.  (AR 809-11.)

At the hearing, Mr. Hill first made opening remarks, stating his position that the April 29, 2017 onset date established by DDS was "correct.," that there was "no reason to reopen" Ms. Zuber's subsequent claim, and that the ALJ should only consider whether Ms. Zuber was disabled, from the alleged onset date of November 7, 2014, through the established onset date of April 29, 2017.  (AR 783-86.)  The ALJ then heard testimony from Ms. Salazar regarding her mother's impairments.  (AR 788-800.)  Ms. Salazar testified that, from 2014 until April of 2017, she saw Ms. Zuber on a near-daily basis.  (AR 788-89.)  Ms. Salazar told the ALJ that her mother suffered from chronic, progressively worsening back pain, caused by a car accident in the 1980s.  (AR 789.)  She reported that, due to the severity of this condition, her mother "had to start going to a chiropractor to get her legs realigned" twice each year, "or else it would cause headaches[,] . . . [or] just like deteriorate her whole body."  (*Id.*)  Ms. Salazar reported that,

4

although her mother did undergo back surgery, the procedure ultimately proved unsuccessful, and her mother's symptoms only "got worse." (AR 790.) Ms. Salazar confirmed that Ms. Zuber never sought physical therapy, or took "anything stronger" than Ibuprofen or Tylenol, to manage her pain. (*Id.*) Ms. Zuber's daughter testified that her mother also suffered from a "sciatic nerve problem" in both legs, which was "an ongoing issue all the time," from which Ms. Zuber "never really got 100% relief." (*Id.*)

Ms. Salazar further testified to the severity and debilitating effects of the impairments from which Ms. Zuber suffered. She told the ALJ that Ms. Zuber had always enjoyed shooting pool and bowling, but that "after 2016 maybe, she stopped doing everything." (AR 791.) Ms. Salazar reported that, due to back pain, her mother had difficulty "picking stuff up," and sitting for prolonged periods of time, especially in cars. (AR 791, 793.) She likewise reported that, beginning around the time of Ms. Zuber's cancer diagnosis, in 2016, Ms. Zuber had difficulty sleeping, and that, beginning in 2017, Ms. Zuber required a cane to ambulate. (AR 792-93, 796.) However, Ms. Salazar was unable to attest to any limitations that her mother experienced with respect to bending, standing, or climbing stairs. (AR 792.)

Ms. Salazar told the ALJ that her mother, while alive, had lived in a "little ranch house" with her companion. (AR 794.) She testified that Ms. Zuber was, to the best of her recollection, able to comfortably move around the house, and help out with household chores, such as dishes and laundry. (AR 795.) Ms. Salazar likewise reported that, up until the last three to four years of her life, Ms. Zuber was able to drive a car. (*Id.*) Ms. Zuber's daughter told the ALJ that, on a typical day, her mother would work on jigsaw puzzles, play cribbage, and watch PBS television. (AR 799.) Ms. Salazar conceded that, despite her claimed impairments, Ms. Zuber was fairly

5

active, and in her words, was "all over, like up and down, up and down." (*Id.*) Upon further questioning by the ALJ, Ms. Salazar also admitted that, in July of 2018, her mother travelled eight hours by car to attend a family reunion in Sturgis, South Dakota. (AR 800.) However, Ms. Salazar told the ALJ that Ms. Zuber ultimately "regrett[ed] the whole trip," because it aggravated her back and foot pain. (*Id.*) Ms. Salazar likewise admitted that, in 2016, her mother flew to Texas for several days to visit her grandchild, though she noted that the trip "took a toll on her." (AR 801.)

## B. *The ALJ's November 29, 2019 Decision*

On November 29, 2019, the ALJ issued a written decision in accordance with the Commissioner's five step, sequential evaluation process.[1] (AR 754-65.) The ALJ determined, at step one, that Ms. Zuber had not engaged in substantial gainful activity since November 7, 2014. (AR 757 ¶ 2.) At step two of her analysis, the ALJ found that, since the alleged onset date of disability, November 7, 2014, Ms. Zuber suffered from three severe impairments: "degenerative

---

[1] The five-step sequential analysis requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met, or equaled, the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988); *see also McCrea v Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004) (observing that the same five-step sequential analysis applies to eligibility determinations for disability insurance benefits and supplemental security income). It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Id.* at 751 & n.2. The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient residual functional capacity ["RFC"] to perform work in the national economy, given his age, education, and work experience. *Id.* A finding that a claimant is disabled, or not disabled, at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A), (2)(A); *see Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

disc disease of the lumbar spine, lumbosacral neuritis, and breast cancer." (AR 757 ¶ 3.) The ALJ likewise found that, since November 6, 2017, Plaintiff suffered from three severe impairments: "degenerative disc disease of the lumbar spine, lumbosacral neuritis, [and] breast cancer with metastatis." (AR 757-58 ¶ 3.) The ALJ also determined that Plaintiff suffered from several non-severe impairments, including "a body mass index above 30," "mild to moderate peripheral artery disease in the left lower extremity," and "mild right hip osteoarthritis." (AR 758 ¶ 3.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, were presumptively disabling prior to November 6, 2017. (AR 758 ¶ 4.)

Before reaching step four, the ALJ assessed Ms. Zuber's residual functional capacity ["RFC"]. The ALJ found that, prior to November 6, 2017, Ms. Zuber was capable of light work, subject to the following limitations:

> [S]he could lift and/or carry twenty pounds occasionally and ten pounds frequently. She could stand and/or walk for a total of about six hours out of an eight-hour workday. She could frequently balance, stoop, kneel, crouch, and crawl. She could frequently climb ramps and stairs, but never ladders, ropes, or scaffolds. She could not work at heights or around dangerous unprotected machinery.

(AR 758 ¶ 5.)

In establishing this RFC, the ALJ evaluated Ms. Zuber's subjective allegations of pain, the objective medical evidence, the opinion evidence. (AR 758-63.) The ALJ determined that, while Ms. Zuber's impairments could reasonably be expected to cause some of the alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects of her conditions, prior to November 7, 2017, was "not fully supported" by the objective medical evidence. (AR 760.) The ALJ concluded, in particular, that portions of Ms. Zuber's testimony were contradicted by other evidence in the record. (*See, e.g.,* AR 759 ("The claimant

7

acknowledged being able to drive and shop in grocery stores once per week despite alleging at the time of her request for [a] hearing that symptoms had become so severe that she no longer had the ability to drive.").)  The ALJ likewise concluded that the "objective evidence and treatment history"—though suggestive of "longstanding issues involving [Plaintiff's] back, dating back prior to the alleged onset date"—supported a finding that Plaintiff "would have been able to perform a reduced range of light work through the established onset date when she developed metathesized cancer and so met a medical listing." (*Id.*)  In reviewing the objective medical evidence, the ALJ also found that, after Ms. Zuber was diagnosed with breast cancer in 2016, "her treatment focused on that condition," and she "did not generally make further complaints or seek treatment for her back condition."  (AR 761.)  In addition, the ALJ concluded that Plaintiff's breast cancer "did not meet [Listing] 13.10," until November 7, 2017, when "a new cancerous lump was discovered."  (AR 761-62.)

In her written decision, the ALJ also discussed the medical opinions, giving "partial weight" to the opinion from a consultative examiner, who examined Ms. Zuber on March 21, 2015, because the examination was conducted "prior to [Ms. Zuber's] surgery."  (AR 762.)  The ALJ likewise gave "little weight" to three separate opinions from Plaintiff's treating chiropractor, because, among other things, the chiropractor was not an acceptable medical source.  (AR 762-63.)

At step four, the ALJ determined, based on the vocational expert's testimony, that prior to November 6, 2017, Ms. Zuber could capably perform her past relevant work as a cashier and an escort vehicle driver.  (AR 763 ¶ 6.)  However, the ALJ concluded that, beginning on November 6, 2017, the severity of Plaintiff's breast cancer satisfied the criteria of SSA Listing

13.10C.  (AR 764 ¶ 7.)  The ALJ likewise found that, as of November 6, 2017, Plaintiff's allegations regarding her symptoms and limitations were "consistent with the evidence." (*Id.*)  For those reasons, the ALJ concluded that, prior to November 6, 2017, Ms. Zuber was not under a "disability," as defined by the Act, "but became disabled on that date and has continued to be disabled through the date she passed away on April 20, 2019."  (AR 764 ¶ 8.)

At the end of the decision, the ALJ concluded that DDS had made "an error," when it "found disability in the subsequent application that overlaps with the findings in this current case."  (AR 764.)  The ALJ conjectured, based on her "review[] [of] this matter," that DDS improperly "backdated" its disability finding with respect to Plaintiff's second claim "to approximately five months prior to the discovery of her recurrent cancer," so as "to account for the five month period prior to [DIB] benefits becoming payable."  (*Id.*)  However, given that this "error" was solely attributable to DDS, the ALJ recommended "a compassionate allowance," pursuant to which Ms. Zuber's estate would not be obligated "to return any overpayment accrued during this five-month period."  (*Id.*)

### III.  *Post-Remand Proceedings*

Following the issuance of the ALJ's decision, on March 26, 2020, this court granted Ms. Salazar's motion to reopen the case, and to be substituted as Plaintiff, with respect to Ms. Zuber's DIB claim only.  (Doc. Nos. 27, 32, 34.)  Upon the case's reopening, on September 4, 2020, the Commissioner filed the Administrative Record.  (Doc. No. 47.)  Ms. Salazar, now substituted as Plaintiff, filed her Opening Brief roughly six weeks later, challenging the ALJ's November 29, 2019 decision on numerous grounds.  (Doc. No. 48.)

On December 11, 2020, the Commissioner responded to Ms. Salazar's Opening Brief by filing the present Motion, asking to remand this case for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). (Mot. 1.) In the Motion, the Commissioner states that, if the case is remanded, "the Appeals Council will instruct the ALJ to reconsider whether the conditions to reopen Ms. Zuber's subsequent Title II claim are met, consistent with 20 C.F.R. §§ 404.987 and 404.989(a)(3)." (*Id.*) The Commissioner explains that, upon remand, "[i]f the claim is reopened, the ALJ will adjudicate the entire period at issue, and should obtain medical expert evidence to determine the date when Ms. Zuber's cancer met or equaled the Listings." (*Id.*) Defendant likewise stated that, "[i]f the claim is not reopened, the ALJ will only adjudicate the claim through April 28, 2017." (*Id.*) According to the Commissioner, "[t]he ALJ will articulate these findings in a new decision." (*Id.*)

On December 24, 2020, Ms. Salazar filed a response to the Commissioner's Motion, arguing that his request for a remand under sentence four is "premature." (Resp. 2.) Ms. Salazar contends, specifically, that such a remand is appropriate, only after the court has made a substantive ruling on the merits of this case. (*Id.*) In addition, Ms. Salazar objects to "the scope" of the present Motion, arguing that the Commissioner's claimed basis for remand "is no different from the Appeal's Council's instructions to the ALJ in the first remand." (*Id.*) In addition, Ms. Salazar argues that the Motion "does not identify which aspects of the November 2019 ALJ decision the Commissioner cannot defend, and offers no specific reasons to support his request for remand." (*Id.* at 4.) Ms. Salazar is adamant that "the specific issue of [Ms. Zuber's] onset date need only be reviewed in [the] context of her 2014 claims only, and not her subsequent application." (*Id.* at 5.) Plaintiff contends, for those reasons, that the court should remand the

10

case under sentence six, and "limit the Commissioner's administrative action to reevaluation of the evidence prior to April 29, 2017, and include instructions that the Commissioner's determination[,] that [Ms. Zuber] became disabled on April 29, 2017, must be left undisturbed and not be subject to re-adjudication." (*Id.* at 6.)  Ms. Salazar argues, in the alternative, that the court should "reverse the Commissioner's decision and remand the case to the Commissioner for immediate payment of benefits on Ms. Zuber's 2014 disability claims from the date [the] alleged disability began." (*Id.*)

## ANALYSIS

Section 405(g), which governs judicial review of final decisions made by the Commissioner, authorizes only two types of remand orders: (1) those made pursuant to sentence four; and (2) those made pursuant to sentence six. *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994); *see* 42 U.S.C. § 405(g).  "These are the only kinds of remand available." *Tower v. Barnhart*, 89 F. App'x 186, 187 (10th Cir. 2004) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991)).

Sentence four, by its terms, authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).  "A sentence four remand is therefore proper whenever the district court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in accordance with such a ruling." *Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000) (citing *Melkonyan*, 501 U.S. at 98); *see Tower*, 89 F. App'x at 188 ("The Supreme Court has held that a district court's remand order did not qualify under

11

sentence four because it did not make any substantive ruling.") (internal quotation marks omitted).

Alternatively, pursuant to the sixth sentence of 42 U.S.C. § 405(g), the court may remand the case, without ruling on the merits, in either of two scenarios: (1) the Commissioner requests a remand, for "good cause," prior to filing an answer; or (2) "new" and "material" evidence is produced, and there is "good cause" for failing to incorporate the evidence into the earlier proceeding. *Nguyen*, 43 F.3d at 1403 (citing 42 U.S.C. § 405(g)). "The first of these situations distinguishes a sentence six remand from a sentence four remand based on timing, while the second situation does so based on substance." *Buckner*, 213 F.3d at 1010; *see Melkonyan*, 501 U.S. at 98 (noting that sentence six authorizes an "entirely different kind of remand" than sentence four).

Here, the Commissioner requests a remand prior to this court's ruling on the substance of Ms. Zuber's disability claim. As such, a remand under sentence four would be improper. *See Greene v. Astrue*, No. 10-4087-JTM, 2011 WL 2671313, at *3 (D. Kan. July 8, 2011) (finding a sentence four remand to be inappropriate for that reason); *Krishnan v. Barnhart*, 328 F.3d 685, 692 (D.C. Cir. 2003) ("The district court made no ruling on the correctness of SSA's decision, which is a necessary prerequisite to a sentence-four remand[.]"); *accord Melkonyan*, 501 U.S. at 98; *see Shalala v. Schaefer*, 509 U.S. 292, 297 (1993) (stating that "[i]mmediate entry of judgment" is "the principal feature that distinguishes a sentence-four remand from a sentence-six remand").

Nor does this case present either of the two circumstances required for remand under sentence six. "Sentence-six remands may be ordered in only two situations: where the

[Commissioner] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala*, 509 U.S. at 297 n.2 (citing 42 U.S.C. § 405(g)).  Here, the Commissioner, by filing the Administrative Record, has already answered the Complaint.  (Doc. No. 47); *see* D.C.COLO.LAPR 10.2(a)(2) ("As an answer to the complaint, the Commissioner shall file a certified copy of the transcript of the relevant administrative record and any affirmative defense, which if not then filed, shall be waived.").  And, neither the Commissioner, nor Ms. Salazar, has proffered evidence that is "new" and "material."  (*See* Reply 2.)  Accordingly, remand under sentence six is also improper.

Finally, in her Response, Ms. Salazar asks the court to "reverse the Commissioner's decision and remand the case to the Commissioner for immediate payment of benefits on Ms. Zuber's 2014 disability claims from the date [the] alleged disability began."  (Resp. 5-6.)  Ms. Salazar is adamant that such relief "is appropriate [because] additional fact finding would serve no useful purpose."  (*Id.* at 5.)  Ms. Salazar also emphasizes that "it has been over six years since Ms. Zuber filed her 2014 disability application and she died while waiting for the Commissioner to properly adjudicate her claim."  (*Id.* at 6.)  However, Ms. Salazar makes no attempt to show that substantial and uncontradicted evidence in the record, as a whole, establishes that Ms. Zuber was disabled, as of her alleged onset date, November 7, 2014.  *See Gilliland v. Heckler*, 786 F.2d 178, 184 (3rd Cir. 1986) (stating that the decision to direct the immediate award of benefits "should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits"); *see also Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006)

("Whether or not to award benefits is a matter of our discretion."). As such, a remand for the immediate award of benefits is not appropriate, either.

Accordingly, it is

**ORDERED** that "Defendant's Motion for Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g)" (Doc. No. 51) is **DENIED**.

Dated this 5th day of March, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge